**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| ASHLEY B. MILLS-HICKS,<br>　　　　　　　Plaintiff<br><br>v.<br><br>NOVO NORDISK, INC. and NOVO NORDISK A/S,<br>　　　　　　　Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-06556 |

---

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff named below, by and through the undersigned counsel, file(s) this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff(s) adopt(s) and incorporate(s) by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff(s) file(s) this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1.     Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): _____Ashley B. Mills-Hicks_____.

2.     If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____N/A_____, as _____ of the estate of _____, deceased.

3.     If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____N/A_____.

4.     If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____N/A_____.


**Defendant(s)**

5.     Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

    __X__ Novo Nordisk Inc.

    __X__ Novo Nordisk A/S

    _____ Eli Lilly and Company

    _____ Lilly USA, LLC

    _____ other(s) (identify): _____

## JURISDICTION AND VENUE

6.     City and state of Plaintiff(s)' current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

_____ Goochland, Virginia _____

7.     State where Plaintiff/Decedent was prescribed the GLP-1RA Product(s) at issue:

_____ Virginia _____

8.     State of Plaintiff's/Decedent's residence at time of their use of the GLP-1RA Product(s) at issue:

_____ Virginia _____

9.     City and state of Plaintiff(s)'/Decedent's residence at time of diagnosis of injury:

_____ Goochland, Virginia _____

10.     Jurisdiction is based on:

__X__   diversity of citizenship pursuant to 28 U.S.C. § 1332

_____   other (plead in sufficient detail as required by applicable rules):

_____

_____

11.     The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

_____ United States District Court for the Eastern District of Virginia _____

12.     Venue is proper in the District Court identified in Paragraph 11 because:

__X__   a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

_____

13.     If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

## **PRODUCT USE**

14.     Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

    __X__    Ozempic (semaglutide)

    _____    Wegovy (semaglutide)

    _____    Rybelsus (oral semaglutide)

    __X__    Victoza (liraglutide)

    _____    Saxenda (liraglutide)

    _____    Trulicity (dulaglutide)

    _____    Mounjaro (tirzepatide)

    _____    Zepbound (tirzepatide)

    _____    Other(s) (specify): _____

15.     To the best of Plaintiff(s)' knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Plaintiff used Victoza from in or about February 2014 until in or about October 2018. Thereafter, Plaintiff used Ozempic from in or about November 2018 until in or about November 2023.

.      **INJURIES AND DAMAGES**

16.    To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check al that apply):

_____ Gastroparesis

_____ Other gastro-intestinal injuries (specify) _____

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

__ X __ Gallbladder Injury (specify) Plaintiff began experiencing abdominal pain, nausea and vomiting and on or about November 20, 2023, Plaintiff was diagnosed with cholelithiasis. Thereafter, on November 22, 2023, a cholecystectomy was performed to remove Plaintiff's gallbladder.

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

_____ Additional/Other(s) (specify): _____

17.    Plaintiff's/Decedent's injuries occurred in approximately (month and year)?

<u>As stated above, Plaintiff began experiencing abdominal pain, nausea and vomiting</u>
<u>and on or about November 20, 2023, Plaintiff was diagnosed with cholelithiasis.</u>
<u>Thereafter, on November 22, 2023, a cholecystectomy was performed to remove</u>
<u>Plaintiff's gallbladder.</u>

18.    In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

    __X__ Injury to self

    _____ Injury to person represented

    __X__ Economic loss

    _____ Wrongful death

    _____ Survivorship

    _____ Loss of services

    _____ Loss of consortium

    _____ other(s) (specify): _____

## CAUSES OF ACTION

19.    In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff(s) hereby adopt(s) and incorporate(s) by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

  __X__   Count I:     Failure to Warn – Negligence

  _____   Count II:     Failure to Warn – Strict Liability

  __X__   Count III:     Breach of Express Warranty/Failure to Conform to Representations

  __X__   Count IV:     Breach of Implied Warranty

  __X__   Count V:     Fraudulent Concealment/Fraud by Omission

  __X__   Count VI:     Fraudulent/Intentional Misrepresentation

  __X__   Count VII:   Negligent Misrepresentation/Marketing

  _____   Count VIII: Strict Product Liability Misrepresentation/Marketing

  __X__   Count IX:     Innocent Misrepresentation/Marketing

  __X__   Count X:     Unfair Trade Practices/Consumer Protection (see below)

  __X__   Count XI:     Negligence

  __X__   Count XII:   Negligent Undertaking

  _____   Count XIII: State Product Liability Act (see below)

  _____   Count XIV: Wrongful Death

  _____   Count XV:   Loss of Consortium

  _____   Count XVI: Survival Action

  __X__   Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

See Exhibit "A" regarding Counts V, Fraudulent Concealment/Fraud by Omission, and VI, Fraudulent/Intentional Misrepresentation.

7

20.     If Plaintiff(s) is/are asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:*

    a.  Indicate the specific statute (including subsections) under which Plaintiff(s) is/are bringing such claims:

       The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5), (6), (8), (14). Plaintiff incorporates Exhibit "B." Defendants misled consumers and Plaintiff's physician regarding the safety and risks associated with the use of their GLP-1 RA products by overstating the benefits and downplaying the risks from using their products.

    b.  Identify the factual allegations supporting those claims (by subsection, if applicable):

       *See* Exhibit "B" attached. _____

       _____

       _____

       _____

\* *Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.     If Plaintiff(s) is/are asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

    a.   Indicate the specific statute (including subsections) under which Plaintiff(s) is/are bringing such claims:

       N/A

    b.   Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff(s)' PLA claim:

       N/A

    c.   Identify the factual allegations supporting those claims:

       N/A

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.     If pre-suit notice is required by statute, did Plaintiff(s) provide some form of separate pre-suit notice to Defendant(s)?  __N/A__ .  If so, attach such notice.

**<u>RELIEF</u>**

Plaintiff(s) pray(s) for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff(s) may be entitled.

**<u>JURY DEMAND</u>**

Plaintiff(s) hereby demand(s) a trial by jury as to all claims triable by jury in this action.

Date:   November 20, 2025                        By: _____

Kristie M. Hightower (LA Bar #31782
Lundy, LLP
501 Broad Street
khightower@lundyllp.com
T: (337) 439-0707

Counsel for Plaintiff

# EXHIBIT A

## FRAUD SUPPLEMENT - COUNTS V & VI

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.      At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4.      Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.      Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.      Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

### Count V: Fraudulent Concealment / Fraud by Omission

7.      Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Risk of GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b.  Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c.  Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d.  Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e.  "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10.      Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the product. Defendants' follow-up television commercials continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk."

c. Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as

nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11.    Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic and Victoza were a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs and Plaintiff was induced to take them.

12.    Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight-loss benefits, Plaintiff would not have used the products, and/or Plaintiff's prescribing physician would not have prescribed it.

13.    As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint

# EXHIBIT B

## UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT

1.    Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-65 as though set forth fully at length herein.

2.    Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.    Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.    The Virginia Consumer Protection Act ("Virginia CPA" or the "Statute" ) was created to protect consumers from fraudulent acts and practices. Va. Code Ann. § 59.1-200(A).

5.    Plaintiff and/or Defendants are "persons" under the Statute.

6.    Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.    Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.    Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.    Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Virginia. In addition, Defendants sold the GLP-1 RA

Products to residents of Virginia; shipped GLP-1 RA Products to Virginia; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Virginia. Defendants' misconduct described herein significantly affected Virginia consumers.

10.    As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

      a.    Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

      b.    Excessively advertising, marketing, and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

      c.    Failing to disclose they conducted research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11.    As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12.    As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients

experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.     The information referenced above that Defendants misrepresented, concealed, and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.     Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians, and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.     Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.     Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing

and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.    Defendants violated the Statute with their advertising tactics, particularly Defendants' 2018 "Oh, oh, oh, Ozempic!" television commercial wherein an actor states "No increased risks" and viewed numerous times by Plaintiff.

18.    Defendants violated the Statute with their follow-up television commercials which continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "No increased risk" which Plaintiff viewed countless times over a period of years.

19.    Plaintiff, Ashley B. Mills-Hicks, purchased and used GLP-1 RA Products and suffered injuries and direct economic loss as a result of Defendants' actions which violated Virginia's unfair trade practices and consumer protection law.

20.    Defendants knew the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

21.    By consistently and pervasively understating the risk and overstating the benefits of taking GLP-1 RA Products, Defendants engaged in unfair, deceptive, and/or fraudulent acts in violation of the statute by, among other things:

    a.  misrepresenting that the GLP-1 RA Products have characteristics, uses, or benefits.
    b.  misrepresenting that the GLP-1 RA Products are of a particular standard, quality, or grade;

    c.  advertising the GLP-1 RA Products with intent not to sell them as advertised; and (d) any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

*See* Va. Code Ann. § 59.1-200(A)(5), (6), (8), (14).

22.     In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

23.     Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

24.     Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

25.     As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions.  Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

26.     Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

27.     The actions and omissions of Defendants are uncured or incurable.

28.    As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

29.    As a direct and proximate result of Defendant(s)' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

30.    Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.

31.    Defendants had actual notice or were put on adequate notice of these acts or omissions, and these claims arising from such acts and omissions.